EMIL C. WEBBER, APPELLANT, v. RICHARD A. ANDERSEN ET AL., APPELLEES.

187 N. W. 2d 290

Filed May 21, 1971. No. 37730.

John T. Carpenter of Matthews, Kelley, Cannon & Carpenter, for appellant.

Kennedy, Holland, DeLacy & Svoboda, Robert L. Berry, and William Lamson, Jr., for appellee Andersen.

Herbert M. Fitle, James E. Fellows, and John Abbott, for appellee City of Omaha.

CARTER, J.

The plaintiff, Emil C. Webber, brought this action in tort to recover damages sustained while confined in the jail of the defendant City of Omaha. The defendant Richard A. Andersen was the chief of police of Omaha and, as such, the senior officer in command of the police department of the City. It is alleged that the police department maintained and controlled the city jail and that its police officers arrested, jailed, and supervised the confinement of the plaintiff in the city jail during the times involved in this action. The City demurred generally to plaintiff's amended petition. The demurrer was sustained and the cause dismissed as to the City. Defendant Andersen moved for summary judgment by his separate motion for summary judgment which was sustained and the amended petition of plaintiff was dismissed as to Andersen. Plaintiff has appealed from the

dismissal of the action as to the City and the grant of summary judgment in favor of Andersen. It will be noted as a matter of clarification that the sustaining of demurrers to the petition as to the defendants Scarpino, Laverty, Abbott, Hammann, Lindblom, Johnson, and Ward have not resulted in the entry of final orders as to them and, consequently, they are not involved in this appeal. By stipulation, the issues as to the City and Andersen were joined in this appeal.

The petition alleges that on or about June 5, 1968, at 12 o'clock midnight, plaintiff was taken into custody without cause and against his will by named police officers of the City of Omaha and conveyed to police headquarters where he was arrested. It is alleged that defendant Andersen was the chief of police of Omaha and the defendant Scarpino a supervisory officer in charge of the patrol officers who picked up the plaintiff and brought him to police headquarters. A judgment was prayed for on the foregoing allegations for false arrest.

In addition to the foregoing, the petition alleges that plaintiff was lodged in jail by defendant policemen where he was held for 5 hours. The cell in which he was placed was already occupied by three belligerent and intoxicated inmates. Defendants Andersen and Scarpino were supervisory officers in charge of the patrol officers and jailers. Plaintiff seeks a judgment against Andersen for false imprisonment.

It is also alleged by plaintiff, in addition to the foregoing, that he was placed in a cell with three intoxicated and rebellious persons who beat him up causing permanent injuries, including the loss of an eye, which will disable, disfigure, and cripple him for the balance of his life. He demands judgment for damages for negligence against the City of Omaha, Andersen, and others, for a substantial amount.

And, lastly, plaintiff alleges that he was logged in, booked, and charged with drunkenness and disorderly

conduct, which charges were without cause or foundation, and constitute a libel and slander against his reputation and person and for which he seeks damages.

To the foregoing petition, the City of Omaha demurred for the reason that the petition does not state facts sufficient to constitute a cause of action and for the further reason that the City is a municipal corporation and, as such, within the doctrine of governmental immunity from suit. It is the sustaining of this demurrer and the resulting dismissal of the action as to the City that affords the basis of this portion of the appeal.

The controlling issue between the plaintiff and the City is the applicability of the governmental immunity doctrine. The parties cite Brown v. City of Omaha, 183 Neb. 430, 160 N. W. 2d 805, and Johnson v. Municipal University of Omaha, 184 Neb. 512, 169 N. W. 2d 286, in support of their respective positions.

In the Brown case, this court held that it has the power to amend the doctrine of governmental imunity in the absence of legislative action to the contrary, recognizing that the legislative process and procedures can be more effectively applied to a comprehensive solution while the court's processes are more effective when directed to specific facts in litigated cases. It suggests a transition by a gradual judicial change by the process of inclusion and exclusion, case by case, and step by step. As a part of this process, the court holds that cities and other governmental subdivisions are not immune from tort liability arising out of the ownership, use, and operation of motor vehicles, and nothing more. At the same time, the court recognizes the superior power and right of the Legislature to legislate on the subject.

In the Johnson case, the court reaffirmed its position in the Brown case in regard to its relation with the Legislature on the question of governmental immunity. In holding that governmental immunity was not a defense in a suit against the Municipal University of Omaha in a case where a pole vaulter was injured when

he fell upon a wooden box which had been negligently placed by the defendant beneath the pole vault standards, the court said: "We now hold that cities, counties, and all other governmental subdivisions, and local public entities of this state, including municipal universities, are not immune from tort liability arising out of a physical condition affirmatively and voluntarily created by the public body on its premises, where the existence of the condition is not reasonably visible or apparent, and where the condition constitutes an unreasonable risk of harm to persons authorized to use and reasonably using the premises for the purposes intended."

In other words, the Brown case holds that governmental immunity is not a defense by a governmental subdivision from tort liability arising out of the ownership, use, and operation of motor vehicles. In the Johnson case, governmental subdivisions are held not to be immune from tort liability arising out of a physical condition affirmatively and voluntarily created on its premises where the condition is not reasonably visible or apparent and creates a risk of harm to persons reasonably using the premises for the purpose intended. This generally denotes the extent of the inroads upon the governmental immunity doctrine permitted by this court by its inclusion and exclusion, case by case, and step by step transition.

It is quite apparent that this court has not wiped out the full scope of the doctrine of governmental immunity. It has attempted only to eliminate governmental immunity in certain areas and then only until such time as the Legislature occupies the field. This court has not eliminated governmental immunity as a defense in actions for false arrest, false imprisonment, and libel and slander. The defense of governmental immunity from actions for negligence has been abrogated in certain types of negligence cases as we have heretofore described. But the legal policy declared appears to be a checkered one intended to fill the void existing prior to legislative action.

We are therefore faced with the problem whether or not the abrogation of the doctrine of governmental immunity should be extended to actions for false arrest, false imprisonment, and libel and slander. We have no decisions of this court that indicate that governmental immunity was to be abrogated as to such actions. Previous cases in which governmental immunity has been denied as a defense bear no resemblance to the three causes of action here being discussed. We conclude that governmental immunity should be, and is, a defense to these types of action. We are influenced by the fact that this is the proper public policy to be adopted because of the enactment in 1969 by the Legislature of a Political Subdivisions Tort Claims Act prohibiting tort claims "except to the extent, and only to the extent, provided by this act," and providing that it "shall not apply to * * * Any claim arising out of assault, battery, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." See §§ 23-2401 and 23-2409(5), R. R. S. 1943.

By his third cause of action, plaintiff alleged negligence in the following respects: That plaintiff was placed in a cell already occupied by three drunken and belligerent inmates by policemen-jailers when they knew or should have known he would be in danger of physical assault and injury; in the failure to remove plaintiff from the cell after he informed them of his fear for his personal safety; in the failure of the jailers to protect him from the attacks of the other inmates of the jail cell; in failing to place plaintiff in a vacant and available cell; in failing to conduct an hourly cell inspection as required by the jail rules; and in failing and neglecting to remove plaintiff from the cell immediately after his injury for medical attention; all of which negligence he asserts is imputed to the City of Omaha.

This cause of action is grounded on negligence. This court has abrogated the doctrine of governmental im-

munity as a defense to certain kinds of negligence actions which we have heretofore discussed. The issue here is whether or not the negligence alleged is one to which the defense of governmental immunity should be abrogated. The proximate cause of the injury sustained by the plaintiff is the criminal assault by the three drunken and belligerent inmates of the jail cell in which plaintiff was confined. It is alleged that the assault and resulting injuries were caused by the failure of the police guards to confine plaintiff in an available, vacant cell; in failing to remove plaintiff to such a cell when he expressed fear of the other inmates; in failing to properly supervise the jail by required inspections; and in failing to promptly remove plaintiff after the assault for the purpose of affording medical attention.

It is not necessary to decide whether or not the governmental immunity doctrine is to be abrogated on the type of negligence involved in plaintiff's third cause of action. The general demurrer was properly sustained on other grounds. It alleges conclusions and not facts which is fatal when attacked by general demurrer.

The proximate cause of plaintiff's injury was the unlawful assault upon him by the three inmates of the cell where he was confined. The assault was committed by third persons, not by the police or jailers. Plaintiff asserts in his petition that the jailers were negligent in failing to confine him in an available, vacant cell. To maintain his cause of action on such ground, plaintiff must plead facts showing negligence by the defendant. It is not negligence, without more, to refuse private accommodations in a jail to each person taken into custody. There must be facts pleaded which show that defendant knew or should have known the risks and dangers which not guarded against amounted to negligence. There was no such pleading here.

Plaintiff alleges that it was negligence on the part of defendant not to remove plaintiff to a vacant cell when he expressed fear of the other inmates. Here again the

plaintiff must plead facts and not a mere conclusion that he was fearful of the other inmates. It is necessary that facts be pleaded which defendant knew or should have known required that plaintiff be removed from the cell to escape a charge of negligence by defendant. It is alleged that defendant was negligent in not making cell inspections in accordance with jail rules. A breach of jail rules affords no basis of an action for negligence unless there are pleaded facts which, if sustained by evidence, constitute a cause of the injury. There are no such facts pleaded here. Plaintiff asserts the defendant was negligent in not removing the plaintiff immediately from the cell for medical treatment. There are no allegations here that such delay, if established, in any manner affected the extent of the injury. The pleaded facts must show a causal relationship to the injury or its extent to constitute actionable negligence. We conclude that the third cause of action as pleaded is demurrable generally even if we assume that negligence, if such there be, was imputable to the City of Omaha.

The plaintiff contends that the trial court erred in granting a summary judgment for the defendant Andersen and against the plaintiff. The undisputed evidence is that Andersen was not present when the incidents occurred affording the basis for plaintiff's action. In fact, the evidence shows that Andersen was not only not present, but he had no knowledge of such incidents until the receipt of reports the next morning, nor is there any evidence that he gave any orders relating to the incidents or in any manner ratified the actions of the policemen or jailers with relation thereto.

In Fidelity & Casualty Co. of New York v. Brightman, 53 F. 2d 161 (8th Cir.), the court stated: "It is well-settled law that public officers are not responsible for acts of subordinate officials, if such subordinates are themselves employees of the government, where there is no negligence on the part of such public officials in employing them, unless the superior officer has directed

or encouraged or ratified such acts, or has personally co-operated therein. (Citing cases.)"

A noted text writer states the rule as follows: "* * * whether or not the subordinate is appointed by him, the public officer is not liable for the subordinate's acts unless he directs the performance of the act complained of or personally cooperates in it. The doctrine of respondeat superior has no application as between a public officer and his subordinates, who are likewise in the public service, unless the officer does direct or countenance the tortious act to be done or cooperates therein. This rule also applies to the tortious acts of policemen and other peace officers, and of municipal employees generally." 4 McQuillin, Municipal Corporations, § 12.226, p. 199.

"A public officer or agent is not responsible for the misfeasances or positive wrongs or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties." Giroux v. Murphy, 88 R. I. 280, 147 A. 2d 465. See, also, Brown v. City of Shreveport (La. App.), 129 So. 2d 540; Martinez v. Cahill, 215 Cal. App. 2d 823, 30 Cal. Rptr. 566; Sarafini v. City and County of San Francisco, 143 Cal. App. 2d 570, 300 P. 2d 44; Jordan v. Kelly, 223 F. Supp. 731. In the last case cited, it is said: "The allegation that the arresting officer was acting under the general supervision, direction and control of the chief of police is not sufficient to render him liable under the statutes and the cases cited."

Plaintiff contends that Andersen is liable under the provisions of section 14-605, R. R. S. 1943, which provides: "The chief of police shall have, in the discharge of his proper duties, like powers and be subject to like responsibilities as sheriffs in similar cases." It is not disputed that a sheriff is responsible for the acts of his deputies. It has been held in other jurisdictions, although it appears to be a case of first impression in this

state, that statutes similar to section 14-605, R. R. S. 1943, were passed for the specific purpose of giving to chiefs of police the same powers and responsibilities to enforce the law as that given to sheriffs and for this limited purpose only.

In discussing this question under a similar provision, the Washington court stated: "Manifestly, the provision which we have quoted was not for the purpose of making the chief of police liable for the acts of policemen. It does nothing more than liken his general duties and obligations to those of the sheriff of King county. If it had been the intention to hold him liable for the acts of policemen, such idea would doubtless have been exactly stated, as has been done in our statutes with reference to sheriffs." Pavish v. Meyers, 129 Wash. 605, 225 P. 633, 34 A. L. R. 561. The holding in Bower v. Davis, 13 Cal. App. 2d 678, 57 P. 2d 574, on the identical issue is to the same effect. The argument that the issue is controlled by section 14-605, R. R. S. 1943, cannot be sustained.

We find no error in the record and the judgment of the district court is affirmed.

AFFIRMED.

SPENCER, BOSLAUGH, SMITH, and McCOWN, JJ.

We concur in the opinion of Carter, J., except that part which holds that the petition failed to state a cause of action in negligence against the defendant City of Omaha.

We are of the opinion that the allegations contained in the third cause of action of the amended petition were sufficient as against a general demurrer and that the demurrer should have been overruled as to that cause of action. We are also of the opinion that, under the circumstances in this case, the question of the applicability of the doctrine of governmental immunity should not be decided upon demurrer, and that the judgment of the district court should be reversed as to the third cause of action against the defendant City of Omaha

and the cause remanded for further proceedings.

PER CURIAM.

Three judges are of the opinion that the judgment of the district court should be affirmed. Four judges are of the opinion that the judgment of the district court should be affirmed except as to the third cause of action against the defendant City of Omaha.

The judgment of the district court is affirmed except as to the third cause of action against the defendant City of Omaha, and as to that cause of action against that defendant the judgment is reversed and the cause remanded for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED.