**Vera E. VANDERPOOL, Appellant,**

v.

**The STATE of Oklahoma and the Oklahoma Historical Society, Appellees.**

**No. 56939.**

Supreme Court of Oklahoma.

July 26, 1983.

Rehearing Denied Dec. 20, 1983.

John W. Norman, Incorporated by Ronald W. Horgan, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., Floyd W. Taylor, First Asst. Atty. Gen., Oklahoma City, for appellees.

LAVENDER, Justice:

This is an appeal from an order of the trial court granting summary judgment in favor of defendants below, State of Oklahoma and the Oklahoma Historical Society.

The facts are not in dispute. Appellant and plaintiff below while employed as an office worker by the Oklahoma Historical Society at a state historical site known as Fort Washita was en route to deliver a telephone message. While traversing the grounds, she was struck in the eye by a rock thrown up by a "Brush Hog" mower operated by a fellow employee while mowing weeds on the site, resulting in permanent loss of sight in her right eye. Plaintiff alleged negligence in that a protective shield on the mower had been removed by an employee of the State making the brush hog defective and allowing objects to be

propelled from the mower, thus rendering the mower totally unfit, unsafe and highly dangerous. Plaintiff seeks damages from the State and from the Society. The district court granted defendants' motion for summary judgment and dismissed the cause, holding that the doctrine of governmental immunity bars the action. Plaintiff appeals.

The nature, purposes, powers and duties of the Oklahoma Historical Society are statutory and are set forth in 53 O.S.1981, § 1, et seq. For the purposes of this appeal, suffice it to say:

The Society is authorized to acquire, operate and maintain real and personal property pertaining and relating to the history of Oklahoma, for the benefit of the public, to purvey the same, and to charge reasonable visitation fees. The Society is empowered to grant concessions, leases or permits after competitive bids, and to develop an education program and service for the purpose of publishing facts regarding Oklahoma historic sites, buildings and property of state significance. Reasonable charges may be made for the dissemination of any such facts or information. The Society is declared to be an agency of the State.

Fort Washita was purchased by the Merrick Foundation of Ardmore, Oklahoma, in 1962 from Douglas and Billie Colbert, and deeded to the Oklahoma Historical Society in April, 1962. Since 1968, the Fort Washita historical site has been staffed, maintained and operated by the Oklahoma Historical Society through state appropriations. Its purpose is to tell that particular aspect of Oklahoma history—antebellum military history in the Indian Territory—to the general public.

The case before us places squarely in issue the doctrine of sovereign immunity and impels us to reexamine the viability and efficacy of that doctrine as applied to tort liability of the State, the counties and of other governmental entities within the State of Oklahoma.

The doctrine of sovereign immunity was first recognized in early England and required that the sovereign could not be sued without his permission. It was not so much a matter of the king being above the law, embodied in the maxim, "the king can do no wrong," as it was in the oft-expressed concept that the courts were a part of the government and could not be used to enforce claims against the government—without the express permission of that government.

The doctrine found its way into the common law of the United States, and in 1821, in *Cohens v. Virginia*,[1] Chief Justice Marshall applied it in suits against the United States, declaring that suits could not be commenced or prosecuted against the federal government without its consent. Subsequently, the doctrine was applied to the states. In applying the doctrine to local government entities, it was early recognized that local government entities occupy a dual character which affected its liability in tort. On the one hand it is a subdivision of the State, endowed with governmental and political powers, and charged with governmental functions and responsibilities. On the other hand, it is a corporate body, capable of much the same acts as a private corporation, and capable of much the same special and local interests and relations, not shared by the State at large. This duality resulted in the attempted differentiation between governmental and proprietary functions, the first generally protected by immunity, the second generally not.[2]

Meanwhile, the expansion of governmental functions with its attendant complexities gave rise to a plethora of governmental agencies whose purpose and function took on characteristics of both governmental and proprietary. Judicial attempts to grapple with what has become a multi-addered medusa has resulted in confusion and uncer-

---

1. 19 U.S. (6 Wheat.) 264, 5 L.Ed. 257.

2. Restatement of the Law of Torts, 2d ed., § 895B; *City of Purcell v. Hubbard*, Okl., 401 P.2d 488 (1965); *Oklahoma City v. Baldwin*, 133 Okl. 289, 272 P. 453 (1928).

tainty all too painfully apparent to legal scholars, and an inability on the part of the courts to evolve any definitive guidelines for the demarcation between governmental and proprietary functions.[3]

Reexamination of the soundness of the concept of governmental immunity in the light of the expanded role of government in today's society has, for various reasons, the enumeration of which would unduly lengthen this opinion, resulted in a retreat from the concept both legislatively and by case law.

In 1946, by the adoption of the Federal Tort Claims Act, Congress gave its consent for the United States to be sued in the district courts, and waived its governmental immunity, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occured." 28 U.S.C. § 1346(b). Various states have enacted statutes imposing more or less general liability in tort on local governmental entities and abrogating governmental immunity, generally or under prescribed circumstances.

In 1957, the Florida Supreme Court in the case of *Hargrove v. Town of Cocoa Beach,*[4] declared that there was no valid distinction between governmental and proprietary functions and determined that under the facts of that case the municipality had no immunity from tort liability, thus presaging a steady flow of case law away from the concept of governmental immunity and abrogating it in whole or in part, until today, there are not more than five states, includ-

ing Oklahoma, which have not abolished the doctrine or have not, in some manner, retreated from its universal application as an immutable concept of the law.[5]

While Oklahoma has been more cautious in its retreat from governmental immunity as a bar to actions for tort, it has not been heretofore totally immune from inroads upon the doctrine.

In 1978, the Oklahoma Legislature enacted the Political Subdivision Tort Claims Act (51 O.S.1981 § 151, et seq.) extending political subdivision tort liability for loss resulting from its torts or the torts of its employees acting within the scope of their employment or duties subject to the limitations specified in the Act. Included in the political subdivisions covered by the act are municipalities, school districts, counties and public trusts where a city, town, school district or county is a beneficiary.

In *Hershel v. University Hospital Foundation,*[6] we brought the application of the doctrine of sovereign immunity of the State of Oklahoma for tort into lock-step with the doctrine as it is applied to counties and municipalities where each is engaged in proprietary functions, thus holding that the State is liable for injuries committed by the State arising from proprietary functions. We thus repudiated the idea the State may not be sued without its consent, express or implied.

We have further held that in certain instances where the State insures itself against liability under legislative authority to do so, governmental immunity is waived by implication to the extent of its insurance coverage.[7]

While in the case of *Gable v. Salvation Army*[8] the doctrine of charitable immunity and not governmental immunity was challenged and repudiated in a personal injury action brought against a charitable corpora-

---

3. Illustrative of the diversity in case law, see 6 A.L.R.4th 1156; 5 A.L.R.4th 773; 48 A.L.R.3d 1288; 46 A.L.R.3d 1084; 44 A.L.R.3d 899; 70 A.L.R.2d 347; 40 A.L.R.2d 927; 25 A.L.R.2d 203; 60 A.L.R.2d 1198, 1203 et seq.; 160 A.L.R. 7.

4. 96 So.2d 130 (Fla.1957).

5. See *Pruett v. City of Rosedale,* Miss., 421 So.2d 1046 (1982).

6. Okl., 610 P.2d 237 (1980).

7. *Schrom v. Oklahoma Industrial Development,* Okl., 536 P.2d 904 (1975).

8. 186 Okl. 687, 100 P.2d 244 (1940).

tion for activities within the corporate powers and carried on to accomplish its charitable purposes, this Court did not hesitate to strike down the alleged immunity where upon critical examination the immunity was found to be unjust and unwarranted on every basis postulated in its favor.

We hold that the governmental-proprietary-function inquiry shall no longer be determinative in assessing liability for tort as to all levels of government in this State.

The doctrine of governmental immunity is hereby modified to bring it in line with what we perceive to be the more just and equitable view, and that which is in conformity with the generally prevailing view determined by the highest courts of our sister states.[9]

In light of the foregoing, it is the finding and determination of this Court that:

A STATE OR LOCAL GOVERNMENTAL ENTITY IS LIABLE FOR MONEY DAMAGES FOR INJURY OR LOSS OF PROPERTY, OR PERSONAL INJURY OR DEATH CAUSED BY THE NEGLIGENT OR WRONGFUL ACT OR OMISSION OF ANY GOVERNMENTAL ENTITY OR ANY EMPLOYEE OR AGENT OF THE GOVERNMENTAL ENTITY WHILE ACTING WITHIN THE SCOPE OF THE GOVERNMENTAL ENTITY'S OFFICE, AND PURPOSE FOR WHICH IT IS CREATED, UNDER CIRCUMSTANCES WHERE THE ENTITY, IF A PRIVATE PERSON, WOULD BE LIABLE TO THE CLAIMANT IN ACCORDANCE WITH

9. In the absence of a statute granting partial or total immunity, a municipality has been held to be liable for its negligence in the same manner as a private person or corporation in the following states by the following cases:

*Jackson v. Florence,* 294 Ala. 592, 320 So.2d 68 (1975);
*City of Fairbanks v. Schaible,* 375 P.2d 201 (Alaska 1962);
*Veach v. Phoenix,* 102 Ariz. 195, 427 P.2d 335 (1967);
*Div. of Admin. v. Oliff,* 350 So.2d 484 (Fla.App.1977);
*Runnels v. Okamoto,* 56 Haw. 1, 525 P.2d 1125 (1974);
*Smith v. State,* 93 Idaho 795, 473 P.2d 937 (1970);
*Klepinger v. Bd. of Comm'rs,* 143 Ind.App. 155, 239 N.E.2d 160 (1968);
*Goodwin v. Bloomfield,* 203 N.W.2d 582 (Iowa 1973);
*Gorrell v. City of Parsons,* 223 Kan. 645, 576 P.2d 616 (1978);
*Haney v. Lexington,* 386 S.W.2d 738 (Ky. 1964);
*Bd. of Comm'rs v. Splendour Shipping & Enterprises Co., Inc.,* 255 So.2d 869 (La.App. 1971);
*Davies v. Bath,* 364 A.2d 1269 (Me.1976);
*Hoffert v. Owatonna Inn Towne Motel, Inc.,* 293 Minn. 220, 199 N.W.2d 158 (1972);
*Jones v. State Highway Comm'n,* 557 S.W.2d 225 (Mo.1977);
*Webber v. Anderson,* 187 Neb. 9, 187 N.W.2d 290 (1971);
*Turner v. Staggs,* 89 Nev. 230, 510 P.2d 879 (1973);
*Merrill v. Manchester,* 114 N.H. 722, 332 A.2d 378 (1974);
*Hicks v. State,* 88 N.M. 588, 544 P.2d 1153 (1975);

*Weiss v. Fote,* 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.W.2d 63 (1960);
*Kitto v. Minot Park Dist.,* 224 N.W.2d 795 (N.D.1974);
*Fry v. Williamalane Park & Rec. Dist.,* 4 Or.App. 575, 481 P.2d 648 (1971);
*Ayala v. Philadelphia Bd. of Pub. Ed.,* 453 Pa. 584, 305 A.2d 877 (1973);
*Becker v. Beaudoin,* 106 R.I. 562, 261 A.2d 896 (1970);
*Beaumont v. Fuentez,* 582 S.W.2d 221 (Tex. Civ.App.1979);
*Kelso v. Tacoma,* 63 Wash.2d 913, 390 P.2d 2 (1964);
*Long v. Weirton,* 214 S.E.2d 832 (W.Va. 1975);
*Holytz v. Milwaukee,* 17 Wis.2d 26, 115 N.W.2d 618 (1962).

Judicial abolishment of governmental immunity as applied to municipalities has been decreed in the following states in the following cases:

*City of Fairbanks v. Schaible,* 375 P.2d 201 (Alaska 1962);
*Stone v. Arizona Highway Comm'n,* 93 Ariz. 384, 381 P.2d 107 (1963);
*Davies v. Bath,* 364 A.2d 1269 (Me.1976);
*Jones v. State Highway Comm'n,* 557 S.W.2d 225 (Mo.1977);
*Merrill v. Manchester,* 114 N.H. 722, 332 A.2d 378 (1974);
*Kitto v. Minot Park. Dist.,* 224 N.W.2d 795 (N.D.1974);
*Becker v. Beaudoin,* 106 R.I. 562, 261 A.2d 896 (1970);
*Long v. Weirton,* 214 S.E.2d 832 (W.Va. 1975);
*Holytz v. Milwaukee,* 17 Wis.2d 26, 115 N.W.2d 618 (1962).

THE LAW OF THE PLACE WHERE THE ACT OR OMISSION OCCURRED.

PROVIDED, HOWEVER, SAID GOVERNMENTAL ENTITY IS IMMUNE FROM TORT LIABILITY FOR ACTS AND OMISSIONS CONSTITUTING

(a) THE EXERCISE OF A LEGISLATIVE OR JUDICIAL FUNCTION, AND

(b) THE EXERCISE OF AN ADMINISTRATIVE FUNCTION INVOLVING THE DETERMINATION OF FUNDAMENTAL GOVERNMENTAL POLICY.

AND FURTHER PROVIDED, THAT THE REPUDIATION OF GENERAL TORT IMMUNITY AS HEREINABOVE SET FORTH DOES NOT ESTABLISH LIABILITY FOR AN ACT OR OMISSION THAT IS OTHERWISE PRIVILEGED OR IS NOT TORTIOUS.[10]

In rendering this opinion, this Court is mindful of the oft-expressed view of this Court that if the doctrine of governmental immunity is to be totally abrogated, such should be done by the Legislature and not by the courts of this State.[11] But having come to the conclusions that the judicially recognized doctrine of governmental immunity in its present state under the case law is no longer supportable in reason, justice or in light of the overwhelming trend against its recognition, our duty is clear. Where the reason for the rule no longer exists, that alone should toll its death knell.

Our decision is limited in its effect to the heretofore judicially created and recognized doctrine of governmental immunity and is not to be taken as in any way rendering ineffective any act of the Legislature in the area of governmental immunity whether presently in effect or hereafter passed.

We are aware of and sensitive to the effect that the immediate application of the rules of law herein enunciated would have upon the various governmental entities affected thereby. These are matters which lie within the sphere of the Legislature alone. We invoke its consideration of the many problems presented, including whether some or all of the governmental entities should be insulated from unlimited tort liability through the enactment of comprehensive or specific Tort Claims Acts which limit or prescribe conditions of liability, their insurance against loss, the maximum monetary liability to be allowed, or, indeed, whether it is the will of the People of the State of Oklahoma, as expressed through the Legislature, that governmental immunity be established by statute, and the terms and conditions thereof. Ample time for consideration of these matters must be afforded.

Except as to the case before us, this opinion shall be effective only as to those claims or causes of action which accrue after 12:01 A.M., October 1, 1985. *Great Northern Railway Co. v. Sunburst Oil & Refining Company*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932).

All previous opinions of this Court which are in conflict with the views herein expressed are hereby overruled.

REVERSED AND REMANDED.

HODGES, DOOLIN, OPALA and WILSON, JJ., concur.

SIMMS, V.C.J., concurs in part and dissents in part.

BARNES, C.J., and IRWIN and HARGRAVE, JJ., dissent.

IRWIN, Justice, dissenting:

As late as March 15, 1983, this court recognized the doctrine of governmental immunity and said that if sovereign immu-

---

**10.** Enunciation of the foregoing rule is not to be construed as abrogating or modifying our holding in *Nixon v. Oklahoma City,* Okl., 555 P.2d 1283 (1976) pertaining to the non-liability of governmental sub-divisions including municipalities for exemplary damages, and the reasons therein set forth for denying such a recovery. *Nixon* comports with what appears to be the majority view. 1 A.L.R.4th 454, et seq.

**11.** See *Spaulding v. State ex rel. Dept. of Transp.,* Okl., 618 P.2d 397 (1980); *Ruble v. Dept. of Transportation of the State of Oklahoma,* 660 P.2d 1049 (1983).

nity is to be abrogated, it should be done by the Legislature and not by the courts. *Ruble v. Department of Transportation of the State of Oklahoma,* Okl., 660 P.2d 1049 (1983).

Various statutes have been enacted by the Legislature which demonstrate legislative intent that the State remain immune from suit on tort claims arising from governmental functions. Some of these are:

(A) 51 O.S.1981, §§ 151–170, "The Political Subdivisions Tort Claims Act." This legislation became effective July 1, 1978, and abolished the sovereign/governmental immunity of municipalities, school districts, counties, and public trusts where a city, town, school district or county is a beneficiary; and all their institutions, instrumentalities or agencies, to the extent of the limitation on liability contained in § 154 of the Act. Governmental immunity continues to bar claims in excess of § 154 limitations. The Legislature could have included the State in this limited waiver of sovereign immunity but chose not to do.

(B) 47 O.S.1981, §§ 157.1–158.2, Liability Insurance for State-owned motor vehicles and equipment. Sections 157.1 and 158.1 contain identical provisions:

> ". . . the governmental immunity of such department or state agency shall be waived only to the extent of the amount of insurance purchased. Such department or state agency shall be liable for negligence only while such insurance is in force, but in no case in any amount exceeding the limits of coverage or any such insurance."

(C) 74 O.S.1981, §§ 20f–20h, which provide for the Legal Defense of State Officers and Employees Sued in Performance of Official Duties. This legislation requires the Attorney General or state agency staff attorneys to defend state officials who are sued upon causes of action arising from the performance of official duties. Under § 20h(A), the cost of the litigation is paid out of the Attorney General's Evidence fund. However, § 20h(B) contains this proviso:

> ". . . except that this act shall not be construed as authorizing the payment by the State of Oklahoma or any agency thereof of any judgment making an award of money damages."

In my opinion if sovereign immunity is to be abrogated, it should be done by the Legislature and not by the courts. If the Legislature had wanted to abrogate sovereign immunity, it would have done so.

I respectfully dissent.