CONNER v. STATE
2025 OK 12
Case Number: 122216
Decided: 02/25/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 12, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

CLAUDIA C. CONNER, Plaintiff/Respondent,
v.
The STATE OF OKLAHOMA, d/b/a, OKLAHOMA EMPLOYMENT SECURITY COMMISSION, Defendant/Petitioner.

REVIEW OF CERTIFIED INTERLOCUTORY ORDER ENTERED IN 
THE DISTRICT COURT OF OKLAHOMA COUNTY;

Honorable Sheila Stinson, District Judge

¶0 This matter concerns the review of a certified interlocutory order denying the Defendant/Petitioner's, Oklahoma Employment Security Commission (OESC), motion to dismiss. The underlying cause of action concerns allegations of employment discrimination made by the Plaintiff/Respondent, Claudia C. Conner, against the OESC. The motion to dismiss was based upon Conner's alleged failure to comply with the notice provisions of the Governmental Tort Claims Act (GTCA). The trial court denied the motion because it found there existed material conflicts between the GTCA and the anti-discrimination statutes. We hold there are no material or irreconcilable conflicts between the two acts pertaining to the dispositive issue concerning the notice provisions. We remand the matter to the district court for further proceedings consistent with this opinion.

PETITION FOR CERTIORARI PREVIOUSLY GRANTED;
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS

Justin P. Grose, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Oklahoma City, Oklahoma for Defendant/Petitioner

Mark Hammons, Hammons, Hurst & Associates, Oklahoma City, Oklahoma for Plaintiff/Respondent

COMBS, J.:

¶1 This case concerns the applicability of the Governmental Tort Claims Act's notice provisions when one sues a governmental entity under Oklahoma's anti-discrimination statutes. The trial court denied the motion to dismiss filed by the Oklahoma Employment Security Commission based on "material conflicts" between the GTCA and the anti-discrimination statutes. We hold, there is no material or irreconcilable conflict between these acts concerning the dispositive issue of the required notice under the GTCA. We reverse the trial court and remand for further proceedings consistent with this opinion.

I. FACTS AND PROCEDURAL HISTORY

¶2 The Plaintiff/Respondent, Claudia C. Conner, alleges in her amended petition, she worked for the Defendant/Petitioner, The State of Oklahoma, d/b/a, Oklahoma Employment Security Commission (OESC), as General Counsel and Chief of Staff. She was terminated on or about November 10, 2021. At the time of her termination, Conner was over sixty years of age. She claims to have possessed all the qualifications necessary for her position, had not been disciplined, warned or counseled about any performance issues, and was satisfactorily performing her job at the time she was terminated. She also received a raise approximately one month prior to being terminated.

¶3 When Conner was hired, the Agency Director, Shelley Zumwalt, allegedly asked her to fire the "old guards" which were older employees. Over the course of her employment, Conner alleges she saw a pattern for terminating older employees and that Zumwalt made ageist statements, e.g., referring to older women as dowdy and frumpy. She also believed she was hired to cover for the firing of older employees.

¶4 Also during her employment, she worked with a state vendor, Mark Davis. Conner became aware of Davis making inappropriate statements to men and women in the office and she counseled him against it. She reported the incident to human resources and had several conversations with that department. Two days before she was terminated, she had reported that Davis' inappropriate conduct had continued. She notes, Davis was hired by the OESC as an employee shortly after her termination. Also, Davis soon thereafter became employed by Zumwalt's husband's firm that had a contract with OESC. Conner claims she received no explanation for her termination.

¶5 On or about December 1, 2021, Conner filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). The EEOC issued a right to sue letter on or about August 25, 2022, and Conner timely filed her Petition in the Oklahoma County, District Court, on November 21, 2022. She only sued The State of Oklahoma d/b/a Oklahoma Employment Security Commission, and no defendant employees were named in either their official capacity or in an individual capacity. Her claims are that she was unlawfully discriminated against based upon her age and gender and she was retaliated against for her reporting of sexual harassment. Her Petition did not cite any specific statutory grounds for her claims.

¶6 The OESC removed the case to the United States District Court for the Western District of Oklahoma, alleging her causes of action arise under federal law --specifically, the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-34; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e-17; and Title VII for her retaliation claim, 42 U.S.C. § 2000e-3. On September 29, 2023, the Western District issued an Order on OESC's motion to dismiss and held Conner's federal claims are dismissed without prejudice for failure to state a claim upon which relief can be granted and further declined to exercise supplemental jurisdiction over her state-law claims. See Conner v. Oklahoma, No. CIV-22-1095-G, 2023 WL 6380018 (W.D. Okla. Sept. 29, 2023).

¶7 Thereafter, Conner filed an Amended Petition in the Oklahoma County District Court case on October 27, 2023. The Amended Petition was nearly identical to her Petition and she added that her EEOC charge of discrimination "is permitted by the Oklahoma-Anti Discrimination Act (OADA)."See 51 O.S. § 157

¶8 A hearing was held on the motion to dismiss and the trial court denied the motion. In her January 11, 2024, Journal Entry the court denied the motion because she found there were "material conflicts between the OGTCA and the Oklahoma Anti-Discrimination Act (OADA) which precludes dismissal." The OESC moved to have the Journal Entry certified for immediate appeal which was granted on March 28, 2024, and a Journal Entry was filed April 29, 2024. On May 29, 2024, the OESC filed a Petition for Certiorari Certified Interlocutory Order with this Court which was granted on June 24, 2024. The matter was also retained by this Court.

II. STANDARD OF REVIEW

¶9 Proceedings to review certified interlocutory orders are governed by 12 O.S. 2021, § 952Stump v. Cheek, 2007 OK 97179 P.3d 606de novo. Frank Bartel Transportation, Inc. v. State ex rel. Murray State College, 2023 OK 121540 P.3d 480

III. ANALYSIS

¶10 The OESC's challenge of the Journal Entry is a challenge to the trial court's subject matter jurisdiction to hear Conner's claims under the OADA. The focus of the challenge concerns whether the GTCA's notice provisions apply to claims under the OADA. More specifically, is a claimant barred from bringing an OADA claim if they fail to timely provide notice under the GTCA to the government entity as required by the GTCA. We answer in the affirmative.

¶11 In 1983, this Court eliminated the State's judicially-created common law immunity from tort suits in Vanderpool v. State, 1983 OK 82672 P.2d 1153Id. ¶24, 672 P.2d at 1157. A decision to allow tort suits is a decision as to whether the People's tax dollars should be used to pay money damages to those who successfully sue the state and we have long recognized the Legislature's exclusive power to set the State's fiscal policy. Barrios v. Haskell County Pub. Facilities Auth., 2018 OK 90432 P.3d 233Vanderpool, the Legislature enacted the Governmental Tort Claims Act in 1984 (1984 Okla.Sess.Laws ch. 226), currently found in 51 O.S. §§ 151

A. The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts.

B. The state, only to the extent and in the manner provided in this act, waives its immunity and that of its political subdivisions. In so waiving immunity, it is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution.

Accordingly, we begin with an understanding that the State is statutorily immune from tort claims unless the Legislature has specifically waived that immunity. The Legislature has done so in the GTCA. Section 153 of the GTCA waives the state's sovereign immunity to a limited extent. In 2014, this section was amended as follows:

A. The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in this act The Governmental Tort Claims Act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state. The state or a political subdivision shall not be liable under the provisions of this act The Governmental Tort Claims Act for any act or omission of an employee acting outside the scope of his the employee's employment.

B. The liability of the state or political subdivision under this act The Governmental Tort Claims Act shall be exclusive and in place of all other shall constitute the extent of tort liability of the state, a political subdivision or employee at arising from common law, statute, the Oklahoma Constitution, or otherwise. If a court of competent jurisdiction finds tort liability on the part of the state or a political subdivision of the state based on a provision of the Oklahoma Constitution or state law other than The Governmental Tort Claims Act, the limits of liability provided for in The Governmental Tort Claims Act shall apply.

51 O.S. Supp. 2014, § 153

"Tort" means a legal wrong, independent of contract, involving violation of a duty imposed by general law, statute, the Constitution of the State of Oklahoma, or otherwise, resulting in a loss to any person, association or corporation as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment.

51 O.S. Supp. 2014, § 15251 O.S. Supp. 2024, § 152

12. "Scope of employment" means performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud;

(emphasis added). A year later, the Legislature amended § 153 to add a new subsection C, as follows:

C. If an action is commenced alleging tort liability on the part of the state or a political subdivision of the state or an employee of the state or of a political subdivision of the state based on a provision of the Oklahoma Constitution or state law other than The Governmental Tort Claims Act, the action shall name as defendant the state or political subdivision against which liability is sought to be established. In no instance in any such action shall an employee of the state or of a political subdivision of the state acting within the scope of employment be named as defendant; provided, however, such person may be named as defendant under alternative allegations that such person did not act within the scope of employment.

51 O.S. Supp. 2015, § 153

¶12 In Bosh v. Cherokee County Bldg. Auth., 2013 OK 9305 P.3d 994Id. ¶7, 305 P.3d at 997. An employer's liability extends when an employee's conduct is an assault of excessive force if the conduct also occurs within one's scope of employment. Id., ¶19, 305 P.3d at 998. We noted several cases where intentional hostile actions of an employee were found to be within the scope of their employment. Id. ¶¶11-13, 305 P.3d at 998-99. "However, different rules apply when the employer is a governmental entity." Id. ¶14, 305 P.3d at 1000. Subject to specific limitations and exceptions, the GTCA waived governmental immunity and governmental accountability has been extended to torts for which a private person would be liable, unless they were committed in bad faith or in a malicious manner. Id. ¶15, 305 P.3d at 1000. We determined the GTCA could not be construed as completely immunizing the State from all liability for violations of the constitutional rights of its citizens. Id. ¶23, 305 P.3d at 1001. We held that Okla. Const. art. 2, §30, provides a private right of action for excessive force, notwithstanding the requirements and limitations of the GTCA. Id.

¶13 Following the Legislature's amendments to the GTCA in 2014, federal questions were again certified to this Court. The question answered was whether Sections 7 and 9 of Article II of the Oklahoma Constitution allow an inmate to bring a tort claim for denial of medical care, despite the GTCA's immunity provision for torts arising from the "provision, equipping, operation or maintenance of any prison, jail or correctional facility." Barrios, 2018 OK 90432 P.3d 233Bosh. Id. ¶¶, 2, 10, 432 P.3d at 235, 238. Our focus was on three amendments made by the Legislature in 2014: 1) the definition of "tort" was amended to add "a legal wrong, independent of contract, involving violation of a duty imposed by general law, statute, the Constitution of the State of Oklahoma, or otherwise,. . ." ; 2) the scope of the State's liability was amended to include torts arising from "common law, statute, the Oklahoma Constitution, or otherwise"; and 3) the Legislature mandated that even if a court nonetheless recognized a constitutional tort (or tort from state law other than the GTCA), such a tort claim is subject to the GTCA's liability limits. Id. ¶10, 432 P.3d at 239. We answered the federal question in the negative, stating:

¶11 We must now determine whether, in spite of the legislative response described above, Bosh's holding can be extended to allow inmates alleging violations of their Article II, Sections 7 and 9 rights to bring suit against the State for money damages.

¶12 It cannot. The Legislature's amendment of the GTCA to specify that the GTCA applies even to tort suits alleging violations of constitutional rights was an exercise of the Legislature's long-recognized power to define the scope of the State's sovereign immunity, which forecloses our ability to expand the common law in a manner that would conflict with statutory law. Thus, because these "constitutional" torts are now clearly "torts" governed by the GTCA, the GTCA's specific prohibition against tort suits arising out of the "operation or maintenance of any prison, jail or correctional facility" bars the claims at issue here.

We held:

Thus, because the Legislature amended the GTCA after our decision in Bosh to specify that the GTCA applies even to tort suits alleging violations of constitutional rights, we conclude that the GTCA's specific prohibition against tort suits arising out of the "operation or maintenance of any prison, jail or correctional facility" is a legislative determination to which we must now defer.

Id. ¶17, 432 P.3d at 240. Therefore, we held that after the 2014 amendments, the liability limitations of the governmental entity under the GTCA is applicable to constitutional torts. The 2014 amendments also included "torts" arising under statute, which would include the OADA. Thus, making the GTCA's liability limits applicable to the OADA. Further evidence of this is the specific 2014 amendments to § 153 (B) clarifying that the GTCA is the exclusive tort liability of a governmental entity even when tort liability is found under another statute.

¶14 The GTCA requires a written notice of a claim against a state or a political subdivision in tort to be presented within one (1) year from the date of loss. 51 O.S. Supp. 2022, § 156Id. The governmental entity has up to ninety (90) days to approve the claim. 51 O.S. 2021, § 157Id. No action for any cause arising under the GTCA shall be maintained unless valid notice had been given and the action is commenced within one hundred and eighty (180) days of the denial of the claim. Expiration of the one hundred and eighty (180) day period in § 157 operates to bar judicial enforcement of the claim against the government to which the Legislature waived sovereign immunity. Shanbour v. Hollingsworth, 1996 OK 67918 P.2d 73

¶15 The trial court's denial of OESC's motion to dismiss was based on "material conflicts" between the OADA and the GTCA. Conner has asserted the existence of various conflicts in the statutes concerning liability, damages, exemptions, notice, and accrual. After the 2014 amendments to the GTCA, it is clear any tort liability of a governmental entity based upon statute is controlled by the GTCA. However, the dispositive issue for purposes of determining whether the district court has subject matter jurisdiction only relates to notice, i.e., whether a GTCA notice is required if one is making claims of discrimination under the OADA. Conner relies on Duncan v. City of Nichols Hills, 1996 OK 16913 P.2d 1303

¶16 In 1996, the time Duncan was decided, the OADA looked much different than today. At that time, the general purpose of the OADA was "to provide for the execution within the state of the policies embodied in the federal Civil Rights Act of 1964 . . . ." 25 O.S. 1991, § 1101Id. ¶16, 913 P.2d at 1307. The original version of the OADA did not create a private cause of action. In 1991, the Legislature enacted 25 O.S. 1991, § 1901Id. ¶18, 913 P.2d at 1307. Section 1901 allowed a person to file an action in district court within two years of filing a claim with the Oklahoma Human Rights Commission. 25 O.S. 1991, § 1901Id. ¶8, 913 P.2d at 1305. Further we found, the stated purpose of the OADA was to implement the policies of federal Civil Rights Laws and therefore, the Legislature was bound to provide protection equal to or greater than the protection provided by the federal civil rights provisions. Id. ¶¶ 20, 24, 913 P.2d at 1308-09. We saw "no reason Duncan should be subject to a shorter limitation period because he sought redress for an alleged civil rights violation under a state statute expressly intended to parallel federal remedies." Because we have held that federal law mandates that state legislatures provide civil rights protection equal to or greater than protection prescribed by federal law, the notice provisions of the OADA take precedence over the notice provisions under the GTCA. Id. ¶29, 913 P.2d at 1310. Therefore, Duncan was not required to comply with the GTCA shorter notice provisions. Id. ¶30, 913 P.2d at 1310.

¶17 Fifteen years after Duncan was decided the Legislature made extensive revisions to the OADA. See 2011 Okla.Sess.Laws ch. 270, § 21, SB 837. Section 1901 was repealed and the purpose section of the OADA, 25 O.S. § 1101Compare 25 O.S. 2021, § 1350with 51 O.S. 2021, § 156Duncan, what irreconcilably conflicted with the GTCA was the now repealed statutory provision that allowed OADA employment discrimination claims based on handicap to be brought within two (2) years. After the 2011 amendments to the OADA, the irreconcilable conflict no longer exists. An individual must file a charge of employment discrimination with the Attorney General's Office of Civil Rights Enforcement or the EEOC within one hundred and eighty (180) days of the injury. 25 O.S. 2021, § 135051 O.S. Supp. 2022, § 156

¶18 Next, Conner asks this Court to find that her claim of intentional discrimination contains an inherent element negating good faith, and therefore it is a tort outside the scope of employment under the GTCA. She asserts that because the tort of discrimination, allegedly, contains an element of bad faith, that it is outside the GTCA and therefore the GTCA does not apply at all and no GTCA notice was needed to be given. Conner cites no precedent of this Court stating that discrimination must include an element of bad faith.See 25 O.S. § 1302Pelligrino v. State ex rel. Cameron Univ. ex rel. Bd. of Regents of State, 2003 OK 263 P.3d 535Pelligrino the plaintiffs brought suit in federal court against Cameron University, the Board of Regents of the State, and Dr. Bhattacharya for tortiously interfering with their employment contracts. Id. ¶2, 63 P.3d at 536. The defendants moved for partial dismissal of plaintiff's claims and alternatively sought dismissal for failure to comply with the GTCA. See United States District Court for the Western District of Oklahoma, Order, CIV-01-668-R, 9-28-2001. The court granted the motion to dismiss Cameron and the Board but did so pursuant to the 11th Amendment of the U.S. Constitution. The court ruled that the tort claims against Dr. Bhattacharya in his official capacity should be dismissed but claims against him in his individual capacity (for torts committed outside the scope of his employment) should not be dismissed because in such a case the individual is not shielded from individual liability. Id. at *4; Pelligrino, ¶3, 63 P.3d at 536. Upon motion for reconsideration, Judge Russell certified a federal question to this Court. The federal question was:

Whether the notice requirements of the Oklahoma Government Tort Claims Act apply to tort claims alleged against a state employee arising out of on-the-job conduct beyond the scope of his employment.

In our analysis, we noted that the GTCA, as a whole, is concerned with liability of the State and governmental entities, not individuals acting outside the scope of their employment. Pelligrino, ¶16, 63 P.3d at 540. The purpose of the GTCA notice provisions is to "protect governmental interests by promoting prompt investigation, repair of dangerous conditions, speedy settlement of meritorious claims, and to give the governmental entity time to meet possible fiscal liabilities." Id. ¶17, 63 P.3d at 540. These notice provisions "are designed to assist governmental interests and not the interest of an employee acting outside the scope of his or her employment." Id. We held that the procedural requirements of the GTCA for presenting claims to governmental entities do not apply to tort claims against a governmental employee when the claim is based upon allegations that the employee acted outside of the scope of their employment. Id. ¶18, 63 P.3d at 540.

¶19 A cursory review of the holding in Pelligrino would appear to support Conner's assertion that no GTCA notice need be provided when one is alleging the tort is one that is outside of the governmental employee's scope of employment. However, we do not find it supportive. The entirety of the opinion must be reviewed to understand the holding. At the time the question was certified to this Court, the state parties had been dismissed and all who remained was the state employee in his individual capacity. Dr. Bhattacharya was attempting to use the plaintiff's failure to provide GTCA notice as a shield to protect himself in his individual capacity. We simply held that the GTCA notice provision was not designed for his protection and therefore the plaintiff's failure to give such notice would not be a bar to continuing the suit against Dr. Bhattacharya. The opinion should not be construed to read that a governmental entity does not deserve notice if the tort claim involves an employee's action outside the scope of employment. If the governmental entity is being sued, then the purpose of the notice is still the same. Obviously, the plaintiff in such a case is hoping for a remedy against the governmental entity, otherwise, only the employee would have been sued in his or her individual capacity. Even the threat of possible liability to the governmental entity is enough to satisfy the purpose of the GTCA notice provisions. Here, Conner is only suing the state entity and no employee is named as a defendant in any capacity.

¶20 In Barrios we held the 2014 amendments to the GTCA made the act applicable to suits alleging violation of constitutional rights. The constitutional tort claims were based on the denial of medical care for a prisoner and the GTCA had a specific exemption from liability for operation of jails. We determined the amendments invoked the State's sovereign immunity to constitutional torts and the GTCA's exemption from liability applied to the plaintiff's claims. Those amendments appear in several places including the definition of tort. See 51 O.S. 2021, § 152supra. The amendments also added torts found in other statutes, i.e., "a legal wrong, independent of contract, involving violation of a duty imposed by . . . statute, . . . ." Likewise, the Legislature's amendments invoked the State's sovereign immunity to torts found in other statutes and specifically made the GTCA's liability limits applicable to such torts. See 51 O.S. 2021, § 153Barrios, acts as a limitation on the State's liability;Barrios even though an applicable liability exemption existed. See 51 O.S. 2021, § 155Barrios), Supreme Court of the State of Oklahoma, No. 117,103, 8-3-2018 at 2.

¶21 Both Duncan and Pelligrino were decided long before the 2014 amendments were made to the GTCA and the 2011 amendments were made to the OADA. Following Bosh, the Legislature acted quickly to clarify that the GTCA is applicable when a suit sounding in tort is filed against the state or political subdivision of the state. With the 2014 amendments, § 153 (B) makes clear the applicability of any liability limits to all torts. It provides:

B. The liability of the state or political subdivision under The Governmental Tort Claims Act shall be exclusive and shall constitute the extent of tort liability of the state, a political subdivision or employee arising from common law, statute, the Oklahoma Constitution, or otherwise. If a court of competent jurisdiction finds tort liability on the part of the state or a political subdivision of the state based on a provision of the Oklahoma Constitution or state law other than The Governmental Tort Claims Act, the limits of liability provided for in The Governmental Tort Claims Act shall apply.

Additionally, the Legislature's 2015 enactment of subsection C of § 153, which allows a plaintiff to name an employee as a defendant when making alternate arguments that such employee acted outside of the scope of their employment, is a further example of legislative intent to apply the GTCA to all torts, including ones where an employee acted outside of the scope of their employment if the governmental entity is being sued. See ¶10 supra. We agree with Pelligrino that an employee sued in their individual capacity is not shielded by the plaintiff's failure to submit a GTCA notice. Its holding is limited to the facts of that case. The GTCA is not applicable when the plaintiff is only suing the employee in their individual capacity for torts committed outside of the scope of their employment. The Legislature's 2014 efforts to clarify the applicability of the GTCA to all torts when the governmental entity is being sued also makes the GTCA notice applicable to such torts. This includes tort claims under the OADA.

¶22 Although not precedential, the OESC has presented citations to numerous recent orders of the United States District Court for the Western District of Oklahoma applying the GTCA notice provisions to OADA discrimination claims. The orders rely heavily on the 2014 amendments made to the GTCA by the Legislature. See Smith v. City of Norman, No. CIV-22-01002-JD, 2023 WL 6521000 (W.D. Okla. Oct. 5, 2023); Stainsby v. Oklahoma ex rel. Oklahoma Health Care Auth., No. CIV-21-1073-D, 2023 WL 1825099 (W.D. Okla. Feb. 8, 2023); Hauck v. Putnam City Indep. Sch. Dist. I001, No. CIV-20-390-G, 2022 WL 3654749 (W.D. Okla. Aug. 24, 2022); Childers v. Bd. of Commissioners of Oklahoma Cnty., No. CIV-19-460-F, 2019 WL 3069446 (W.D. Okla. July 12, 2019); Jones v. Indep. Sch. Dist. 89, No. CIV-19-797-R, 2019 WL 6917896 (W.D. Okla. Dec. 19, 2019). These orders include discrimination claims of the very same type made by Conner in this case.

IV. CONCLUSION

¶23 Failure to timely comply with the notice provisions of the GTCA is a jurisdictional matter. The defendants alleged in their brief that Conner did not comply with the GTCA notice provisions nor claimed she did in her Amended Petition. A review of the record confirms no mention of compliance. The trial court's Journal Entry was based on perceived "material conflicts" between the GTCA and OADA which the court determined precluded dismissal. It did not decide whether Conner complied with the GTCA notice provisions. We find no "material conflict" between the acts on the dispositive issue, i.e., required notice. We reverse the trial court's ruling and remand the matter to the trial court for further proceedings consistent with this opinion.

PETITION FOR CERTIORARI PREVIOUSLY GRANTED;
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS

Concur: Rowe, C.J., Kuehn, V.C.J., Winchester, Edmondson, Combs, Darby, and Kane, J.

Recused: Gurich, J.

FOOTNOTES

25 O.S. §§ 1101

51 O.S. Supp. 2024, § 152

17. "Tort" means a legal wrong, independent of contract, involving violation of a duty imposed by general law, statute, the Constitution of the State of Oklahoma, or otherwise, resulting in a loss to any person, association or corporation as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment; provided, however, a tort shall not include a claim for inverse condemnation.

51 O.S. Supp. 2024, § 152Bosh we discussed extensively cases where an intentional tort was found to have been committed within the scope of one's employment. See Bosh, 2013 OK 9305 P.3d 994Id. ¶14, 305 P.3d at 1000. With exception, the government has waived tort immunity "unless they were committed in bad faith or in a malicious manner." Id. Conner relies predominantly on cases where the tort contains an element of malice., e.g., Tuffy's Inc. v. City of Okla. City, 2009 OK 4212 P.3d 1158Nail v. City of Henryetta, 1996 OK 12911 P.2d 914Parker v. City of Midwest City, 1993 OK 29850 P.2d 1065

In a recent unpublished, non-precedential, Order of the United States District Court for the Western District of Oklahoma, the court found similar arguments to be "novel" but refused to dismiss the Oklahoma Department of Consumer Credit on its assertion that unlawful discrimination necessarily precluded a finding of good faith. Franklin v. Oklahoma ex rel. Oklahoma Dep't of Consumer Credit, No. CIV-16-1103-D, 2017 WL 2259620, at *2 (W.D. Okla. May 19, 2017).

The Department provides no legal authority for this novel argument but, instead, relies on case law concerning torts that require proof of an element that excludes good faith conduct, such as malicious prosecution, fraud, and intentional infliction of emotional distress. See Def. State's Mot. [Doc. No. 7] at 10-11. The Department does not identify any element of an age discrimination claim that necessarily is inconsistent with good faith conduct. Therefore, the Court rejects this basis for dismissal of Plaintiff's age discrimination claim against the Department.

Id.

51 O.S. 2021, § 153

The state or a political subdivision shall not be liable under the provisions of The Governmental Tort Claims Act for any act or omission of an employee acting outside the scope of the employee's employment.
(Emphasis added).