Wyrick, J.:
*235 ¶1 Two federal courts have certified to us the following questions:
1. The Governmental Tort Claims Act renders the State immune from any tort suit arising out of the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility." Do Sections 7 and 9 of Article II of the Oklahoma Constitution nonetheless allow an inmate to bring a tort claim for denial of medical care?
2. If so, is the private cause of action to be recognized retrospectively?
¶2 Answering these questions requires us to determine whether we should extend our holding in Bosh v. Cherokee County Governmental Building Authority , 2013 OK 9, 305 P.3d 994, to include tort claims brought by inmates alleging violations of their rights to due process and to be free from cruel or unusual punishments. Because the Legislature responded to our decision in Bosh by amending the Governmental Tort Claims Act ("GTCA"), 51 O.S. §§ 151 et seq ., to clarify that the State's immunity from suit extended even to so-called "constitutional" torts,[1] we answer the first question "no." Accordingly, we do not reach the second question.
I
¶3 Russell Foutch and Randall Barrios died while incarcerated in county jails, Barrios by his own hand,[2] Foutch from complications related to pneumonia.[3] Their estates sued the respective jails, one sheriff, and various employees and healthcare contractors of those jails. Their claims included (1) federal civil rights claims under 42 U.S.C. § 1983 alleging violations of the Eighth and Fourteenth Amendments of the federal constitution, (2) negligence and wrongful death claims, (3) negligent conduct, training, hiring, and supervision claims, and (4) tort claims alleging violations of rights guaranteed by Sections 7 and 9 of Article II of the Oklahoma Constitution.[4]
¶4 In Foutch's case, the healthcare contractor filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss Foutch's negligence, state constitutional, and § 1983 claims, while the jail filed a partial motion to dismiss all of Foutch's negligence and state constitutional claims. Both the healthcare contractor and the jail argued they were immune from suit under the Oklahoma GTCA and that Foutch *236 had failed to raise a plausible claim for denial of medical care under Article II, Section 7 or 9 of the Oklahoma Constitution.[5] The trial court granted the jail's partial motion to dismiss and the healthcare contractor's motion to dismiss Foutch's state constitutional claims, but allowed Foutch's § 1983 claim to proceed. Both dismissals were premised on the district court's conclusion that this Court had never recognized a cause of action for denial of inmate medical care under Article II, Section 7 or 9 of the Oklahoma Constitution. Foutch subsequently filed a motion to reconsider and asked the district court to certify questions to this Court for guidance on whether such a cause of action exists. The trial court denied Foutch's motion to reconsider, but granted Foutch's motion to certify the questions.
¶5 In Barrios's case, the jail and its employees filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss Barrios's negligent training/hiring/supervision and state constitutional claims. The former sheriff also filed a partial motion to dismiss the same claims, as well as Barrios's negligence and wrongful death claims. The trial court ordered the parties to show cause why the state immunity questions should not be certified to the Oklahoma Supreme Court. Barrios wanted the questions certified; the defendants did not. The trial court certified the questions.
¶6 Due to the commonality of the questions presented, we made the cases companion cases and now answer the certified questions in this single opinion.[6]
II
A
¶7 We have long recognized that the Legislature has the final say in defining the *237 scope of the State's sovereign immunity from suit.[7] Indeed, when the Court eliminated the State's judicially-created common law immunity from tort suits in Vanderpool v. State , 1983 OK 82, 672 P.2d 1153, we were careful to note our lack of power to withdraw immunity granted by legislative act.[8] A decision as to whether to allow tort suits is, after all, a decision as to whether the People's tax dollars should be used to pay money damages to those who successfully sue the state; so this recognition is consonant with our longstanding recognition of the Legislature's exclusive power to set the State's fiscal policy.[9]
¶8 The Legislature has oft exercised its power to define the scope of the State's immunity from suit. After Vanderpool , the Legislature enacted the GTCA and unequivocally abrogated Vanderpool 's common law decision with a statute declaring that "[t]he State of Oklahoma does hereby adopt the doctrine of sovereign immunity" from tort suits, while simultaneously waiving that immunity for certain tort claims.[10] Accordingly, in cases including tort claims against the State and state actors, the Court begins with the understanding that the State is statutorily immune from tort suit unless the Legislature has expressly waived that immunity. We thus look next to the text of the GTCA to determine whether its limited waivers of sovereign immunity from tort suit encompass the particular tort suit at issue.[11]
¶9 Analyzing a prior version of the GTCA, this Court did just that in Bosh, holding that the GTCA did not bar a tort claim alleging that excessive force was used against a pre-trial detainee in violation of the detainee's Article II, Section 30 right not to be unreasonably seized. We read the GTCA as stopping short of "immunizing the state completely from all liability for violations of the constitutional rights of its citizens."[12] The text of the GTCA certainly didn't expressly include tort claims arising from alleged deprivations of constitutional rights-and we have always said that "[i]mmunity cannot be read into a legislative text that is silent, doubtful or ambiguous."[13] Accordingly, *238 we recognized a common law tort remedy for claims arising from alleged violations of Article II, Section 30 rights.[14]
¶10 As it did after Vanderpool , the Legislature in 2014 responded to Bosh by amending the GTCA to specify that the State's immunity from suit extended even to torts arising from alleged deprivations of constitutional rights.[15] The Legislature first amended the definition of "tort" to include tort claims arising from alleged violations of constitutional duties:
"Tort" means a legal wrong, independent of contract, involving violation of a duty imposed by general law , statute, the Constitution of the State of Oklahoma, or otherwise, resulting in a loss to any person, association or corporation as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment.[16]
It next made a similar addition to the section describing the scope of the State's tort liability:
The liability of the state or political subdivision under this act The Governmental Tort Claims Act shall be exclusive and in place of all other shall constitute the extent of tort liability of the state, a political subdivision or employee at arising from common law , statute, the Oklahoma Constitution, or otherwise.[17]
And then lastly, it mandated that even if a court nonetheless recognized a constitutional tort, such a tort claim is subject to the GTCA's liability limits.[18]
B
¶11 We must now determine whether, in spite of the legislative response described above, Bosh 's holding can be extended to allow inmates alleging violations of their Article II, Sections 7 and 9 rights to bring suit against the State for money damages.
¶12 It cannot. The Legislature's amendment of the GTCA to specify that the GTCA applies even to tort suits alleging violations of constitutional rights was an exercise of the Legislature's long-recognized power to define the scope of the State's sovereign immunity, which forecloses our ability to expand the common law in a manner that would conflict with statutory law.[19]
*239 Thus, because these "constitutional" torts are now clearly "torts" governed by the GTCA, the GTCA's specific prohibition against tort suits arising out of the "operation or maintenance of any prison, jail or correctional facility" bars the claims at issue here.[20]
¶13 Even if not barred by sovereign immunity, however, it is doubtful that such claims would exist in the Oklahoma common law. Certainly nothing in the text of Article II, Sections 7 and 9 creates a tort cause of action for money damages as a remedy to vindicate violations of those rights, nor do these plaintiffs point to any common law tradition of the State paying money damages to the families of inmates who take their own lives or succumb to illness while in prison.[21] These plaintiffs instead rely primarily on our decision in Washington v. Barry, 2002 OK 45, 55 P.3d 1036, where we assumed for purposes of our decision that Article II, Section 9 creates a cause of action for an inmate to bring a tort claim alleging violations of his or her right to be free from cruel or unusual punishments.[22] We resolved that case, however, on the basis that the inmate failed to adequately plead such a claim; so we have never squarely held that such a claim exists.[23]
¶14 The best support for the notion that violations of Article II, Section 9 rights should be vindicated through tort suits comes from the United States Supreme Court's decision in Carlson v. Green , 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), where that Court held that Eighth Amendment rights could be vindicated through tort suits. In the very recent decision of Ziglar v. Abbasi , --- U.S. ----, 137 S.Ct. 1843, 198 L.Ed.2d 290 (2017), however, the United States Supreme Court declined to recognize a tort claim brought by detainees who alleged they were abused in violation of their Due Process Rights. In so doing, the Ziglar Court called the continuing validity of Carlson into grave doubt,[24] saying that it might decide the case *240 differently today because "the arguments for recognizing implied causes of action for damages" had "los[t] their force."[25]
¶15 "[W]hen the question is whether to recognize an implied cause of action to enforce a provision of the Constitution itself,"[26] the Ziglar Court said, "it is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against [government] officials in order to remedy a constitutional violation."[27] Because "claims against [government] officials often create substantial costs," including "the time and administrative costs attendant upon intrusions resulting from the discovery and trial process," it is the Legislative Branch that has "substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the [State] Government."[28] The Court noted that Congress had in a similar context specified that the Federal Tort Claims Act did not authorize any claim against a federal employee "which is brought for a violation of the Constitution,"[29] leading it to conclude that there, "Congress [had] ... weighed those concerns in deciding not to substitute the Government as defendant in suits seeking damages for constitutional violations."[30]
¶16 For all those reasons, the Ziglar Court "made clear" that expanding tort remedies for constitutional violations is now a "disfavored judicial activity."[31] Accordingly, "[w]hen a party seeks to assert an implied cause of action under the Constitution itself, just as when a party seeks to assert an implied cause of action under a ... statute, separation-of-powers principles are or should be central to the analysis. The question is 'who should decide' whether to provide for a damages remedy, [the Legislature] or the courts?"[32]
¶17 We agree that "[t]he answer most often will be" the Legislature, because "[w]hen an issue 'involves a host of considerations that must be weighed and appraised,' it should be committed to 'those who write the laws' rather than 'those who interpret them.' "[33] Thus, because the Legislature amended the GTCA after our decision in Bosh to specify that the GTCA applies even to tort suits alleging violations of constitutional rights,[34] we conclude that the GTCA's specific prohibition against tort suits arising out of the "operation or maintenance of any prison, jail or correctional facility" is a legislative determination to which we must now defer.
* * *
*241 ¶18 In answer to the certified questions, we declare that (1) because the Legislature invoked the State's sovereign immunity as to constitutional torts via the GTCA, Sections 7 and 9 of Article II of the Oklahoma Constitution do not allow an inmate to bring a tort claim for denial of medical care, and (2) accordingly, the second question is moot.
CERTIFIED QUESTIONS ANSWERED
Combs, C.J., and Kauger, Winchester, Reif, and Wyrick, JJ., concur.
Gurich, V.C.J., and Edmondson (by separate writing) and Darby, JJ., concur in result.
Colbert, J., dissents.
EDMONDSON, J., Concurring in result.
¶1 I concur in the result of the Court's opinion. The effect of the Court's opinion will be sub silentio to disapprove or distinguish language in Bosh v. Cherokee County Governmental Building Authority , 2013 OK 9, 305 P.3d 994, and Washington v. Barry , 2002 OK 45, 55 P.3d 1036. Any statements in either Bosh or Washington impliedly or expressly indicating an alleged state or federal constitutional violation may be used for either (1) a governmental statutory tort claim or (2) a "constitutional tort" claim against the State and its officials, when otherwise expressly forbidden by the State's sovereign immunity statutes , should be expressly disapproved by this Court to avoid confusion by the Bench and Bar. The Court's opinion today is inconsistent with Perry v. City of Norman , 2014 OK 119, 341 P.3d 689, and Perry should be overruled to the extent it allows a constitutional tort claim against the public purse when such a claim is expressly prohibited by the Oklahoma Governmental Tort Claims Act.
¶2 Our 1972 opinion in State ex rel. Department of Highways v. McKnight explained Oklahoma's sovereign immunity from a legal action in an Oklahoma court is based upon Oklahoma statutes, and a statute must clearly permit the state to be sued or the right to do so will not exist[1] In McKnight we quoted language from State ex rel. Williamson, Attorney General v. Superior Court of Seminole County, and again stated "It is fundamental that the State cannot be sued in any manner, or upon any liability, constitutional, statutory, or contractual , unless there is express consent thereto."[2] The petition in State ex rel. Williamson alleged violations of several provisions of the Oklahoma Constitution.[3] The fact that the present actions are brought based upon the alleged violation of federal constitutional rights is insufficient to supplant Oklahoma's statutory sovereign immunity when the alleged federal constitutional rights are asserted as a basis for a tort action for monetary damages .
¶3 Generally, there are several types of actions where a plaintiff may bring an action against a state governmental agency and assert the personal deprivation of state and federal constitutional rights. One authority has stated the following.
The courts have looked to whether the relief sought would serve an anticipatory or preventive purpose other than to compel affirmative action on the part of, or to establish a claim against, the government or its agents. In the former instance, the action may be maintained, in the latter it is barred. Similar reasoning has been applied where the courts have lifted the bar of immunity from actions for injunctive relief, again, especially in constitutional litigation.
Civil Actions Against State Government, Its Divisions, Agencies and Officers (W. Winborne ed. 1982) 59-60, Section 2.29.
*242 As explained further, "whether a particular action falls within the prohibition of suits against the state is dependent on the particular issues involved and the relief sought[4] ... an action for a money judgment against the state is usually barred[5] ... to avoid the bar of immunity it must appear that the payment of a judgment rendered in the action would not come from state coffers." Civil Actions Against State Government , at 73, § 2.34. It is noteworthy that this last rule cites in support thereof our opinion in State ex rel. Department of Highways v. McKnight .[6]
¶4 The issue of paying a judgment from public funds also arises in jurisprudence relating to a state's Eleventh Amendment immunity in federal courts, and the power of Congress to authorize an action against a State Treasury pursuant to § 5 of the Fourteenth Amendment to the U. S. Constitution. For example, the U. S. Supreme Court has explained that in Will v. Michigan Dept. of State Police , Congress did not authorize a federal constitutional claim under 42 U.S.C. § 1983 against a State's Treasury in either federal or state courts .[7]
Will 's holding does not rest directly on the Eleventh Amendment. Whereas the Eleventh Amendment bars suits in federal court "by private parties seeking to impose a liability which must be paid from public funds in the state treasury," Edelman v. Jordan , 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974), Will arose from a suit in state court. We considered the Eleventh Amendment in Will only because the fact that Congress did not intend to override state immunity when it enacted § 1983 was relevant to statutory construction: "Given that a principal purpose behind the enactment of § 1983 was to provide a federal forum for civil rights claims," Congress' failure to authorize suits against States in federal courts suggested that it also did not intend to authorize such claims in state courts. 491 U.S. at 66, 109 S.Ct. at 2310.
Hafer v. Melo , 502 U.S. 21, 30, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).
The remedy of 42 U.S.C. § 1983 is available in an Oklahoma state court regardless of state statutory sovereign immunity.[8] A 42 U.S.C. § 1983 claim is not one against the State Treasury. Hafer , supra . Any alleged federal or state right must be adjudicated within the remedial framework of a legally cognizable action, and the Governmental Tort Claims Act[9] does not provide a remedy or recognize a cause of action when that Act expressly prohibits a party using a state constitutional right "or otherwise" as a basis *243 for any tort liability against the state when the cause of action is otherwise prohibited by that Act.
¶5 A problematic argument may be made for recognizing a cause of action for "constitutional damages" as a state tort claim based upon opinions such as Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics ,[10] or Carlson v. Green .[11] Bivens was brought as a general federal question jurisdiction case and viewed as a complementary cause of action brought pursuant to the Federal Tort Claims Act.[12] However, a Bivens remedy does not establish any substantive rights; it authorizes a suit against an individual official , and "the sovereign still remains immune from suit ."[13] Bivens provided a § 1983 -type remedy against "federal individuals" and did not negate sovereign immunity. In Carlson the Court noted "we have here no explicit congressional declaration that persons injured by federal officers' violations of the Eighth Amendment may not recover money damages from the agents but must be remitted to another remedy, equally effective in the view of Congress."[14] Neither Congress or the U. S. Supreme Court has required Oklahoma or any other state to allow litigants to assert violations of federal constitutional law as a basis for state tort claims which are expressly prohibited by that state's sovereign immunity statutes.
¶6 Section 153 (B) of Title 51 (O.S.Supp.2015) (emphasis added) states:
B. The liability of the state or political subdivision under The Governmental Tort Claims Act shall be exclusive and shall constitute the extent of tort liability of the state, a political subdivision or employee arising from common law, statute, the Oklahoma Constitution, or otherwise. If a court of competent jurisdiction finds tort liability on the part of the state or a political subdivision of the state based on a provision of the Oklahoma Constitution or state law other than The Governmental Tort Claims Act, the limits of liability provided for in The Governmental Tort Claims Act shall apply.
This statute includes all "tort liability" of the state or political subdivision and the statute makes no distinction in liability between a breach arising from statutory, constitutional, common law duties "or otherwise." It is consistent with State ex rel. Williamson, Attorney General v. Superior Court of Seminole County, supra , and sovereign immunity applies to an alleged breach of federal or constitutional law when tort monetary damages are prohibited by the Oklahoma Governmental Tort Claims Act.
¶7 Bosh includes language as follows.
In Washington v. Barry , 2002 OK 45, 55 P.3d 1036, this Court held that a private cause of action may exist for inmates to recover for excessive force under the provisions of the Okla. Const. art. 2, § 9 and the 8th Amendment of the United States Constitution-despite the provisions of the OGTCA.
Bosh , 2013 OK 9, ¶ 18, 305 P.3d 994, 1000-1001, notes omitted.
We later stated in Perry v. City of Norman ,[15] that a Bosh action was not available when a claim was available pursuant to the Oklahoma Governmental Tort Claims Act. We stated Bosh recognized "notwithstanding the OGTCA" "a private constitutional excessive force action may exist for prison inmates against prison officials."[16] The Court recognized a "constitutional tort" against the State of Oklahoma when the claim fell outside the statutory boundaries set by the Legislature in the Oklahoma Governmental Tort Claims *244 Act. There is no viable tort claim outside the boundaries of the OGTCA when the claim seeks a money judgment for damages against the State of Oklahoma.
¶8 In Vanderpool v. State ,[17] this Court acknowledged the Legislature's right to enact sovereign immunity by statute. Nothing has changed since Vanderpool on the question whether the Legislature may determine the scope of liability for tort claims seeking money from the public purse. Our legislative body, the Oklahoma Legislature, has expressly stated in 51 O.S.Supp.2016 § 153(B) the extent of liability pursuant to the OGTCA shall be exclusive and is the extent of tort liability of the state arising from common law, statute, the Oklahoma Constitution, or otherwise . An alleged violation of federal or constitutional law, statute, common law, or otherwise may not be used for either (1) a OGTCA claim prohibited by the OGTCA, or (2) a constitutional tort claim outside the bounds set by the Legislature in the OGTCA.
¶9 The U.S. Supreme Court has stated "[t]he immunity of a truly independent sovereign from suit in its own courts has been enjoyed as a matter of absolute right for centuries."[18] Statutory sovereign immunity granted to the State of Oklahoma and its officials and employees does not violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U. S. Constitution.[19] The doctrine of sovereign immunity was a well-established principle of common law at the time the Oklahoma Constitution was created.[20] Limiting tort claims for damages against the State to those allowed by the OGTCA does not violate either the federal or Oklahoma Constitution .
¶10 Any statements in Bosh v. Cherokee County Governmental Building Authority , 2013 OK 9, 305 P.3d 994, or Washington v. Barry , 2002 OK 45, 55 P.3d 1036, indicating an alleged constitutional violation may be either (1) the basis of an OGTCA claim when expressly prohibited by that Act, or (2) a viable tort claim against the State and its officials, when otherwise expressly forbidden by the State's sovereign immunity statutes , should be expressly disapproved. Our opinion in Perry v. City of Norman , 2014 OK 119, 341 P.3d 689, should be expressly overruled on Perry's statement a constitutional tort claim may brought against the State when the OGTCA prohibits the claim. The Oklahoma Governmental Tort Claims Act provides the State of Oklahoma shall not be liable for a monetary tort damages if a loss or claim results from provision, equipping, operation or maintenance of any prison, jail or correctional facility.[21] If the OGTCA bars a plaintiff's tort claim, then the fact that the alleged breach is based upon a constitutional duty does not thereby authorize a state law claim based on constitutional, statutory, or common-law claim in tort for damages against the State.

See Act of April 21, 2014, ch. 77, §§ 1-2, 2014 O.S.L. 245, 249-50 (codified at 51 O.S.Supp.2014 §§ 152(14), 153(B) ).

Order Certifying Questions of State Law to Sup. Ct. of Okla. [Doc. 54] at 2, Barrios ex rel. Estate of Barrios v. Haskell Cty. Pub. Facilities Auth. , No. 6:17-cv-00325-SPS (E.D. Okla. June 13, 2018). The underlying facts in this matter are set out in the certification orders from the federal courts. In answering a certified question, this Court does not presume facts outside those offered by the certification order. Odom v. Penske Truck Leasing Co. , 2018 OK 23, ¶ 1, 415 P.3d 521, 524. Although this Court will neither add nor delete such facts, we may consider uncontested facts supported by the record. Id. ¶ 1, 415 P.3d at 524.

Compl. [Doc. 2] ¶ 9, at 3, Foutch ex rel. Estate of Foutch v. Turn Key Health, LLC , No. 4:17-cv-00431-GKF-JFJ (N.D. Okla. filed July 20, 2017).

Compl. [Doc. 2] ¶¶ 24-73, at 6-17, Barrios , No. 6:17-cv-00325-SPS (E.D. Okla. filed Aug. 30, 2017); Order Certifying Questions of Law to the Sup. Ct. of Okla. [Doc. 49] at 2, Foutch , No 4:17-cv-00431-GKF-JFJ (N.D. Okla. June 27, 2018).

Generally speaking, the staff of a healthcare contractor at a jail are "employees" who are entitled to tort immunity under the GTCA by virtue of sections 152(7)(b), 153(A), and 155(25). See 51 O.S.Supp.2015 § 152(7)(b) ("As used in The Governmental Tort Claims Act: ... 7. 'Employee' means any person who is authorized to act in behalf of a political subdivision or the state whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time basis. ... b. For the purpose of The Governmental Tort Claims Act, the following are employees of this state, regardless of the place in this state where duties as employees are performed: ... (5) physicians who provide medical care to inmates pursuant to a contract with the Department of Corrections, [and] ... (7) licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies...."); id. §§ 153(A), 155(25). We have not been asked whether Turn Key Health, LLC or its staff are "employees" under section 152(7)(b), but have assumed they are for purposes of answering the questions certified to us.

This Court has the power to answer these certified questions of law. Such power exists so long as the certified questions are presented in accordance with the provisions of the Revised Uniform Certification of Questions of Law Act, 20 O.S.2011 §§ 1601 -1611. Odom , 2018 OK 23, ¶ 7, 415 P.3d at 525. This Court's discretionary power to answer is set out in section 1602, which provides:
The Supreme Court and the Court of Criminal Appeals may answer a question of law certified to it by a court of the United States, or by an appellate court of another state, or of a federally recognized Indian tribal government, or of Canada, a Canadian province or territory, Mexico, or a Mexican state, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state.
Accordingly, in assessing whether a certified federal question of law should be answered by this Court, both factors mentioned by section 1602 should be addressed: (1) Would the answer be dispositive of an issue in pending litigation in the certifying court? (2) Is there established and controlling law on the subject matter?
In this matter, there is no controlling Oklahoma precedent. In Barrios , the questions certified would be dispositive of Barrios's "constitutional" tort claims in the underlying federal action. In Foutch , however, the federal district court has already dismissed the relevant claims and has denied a motion to reconsider that ruling, which raises doubt about whether the questions from the Foutch case are certifiable. See Cray v. Deloitte Haskins & Sells , 1996 OK 102, ¶¶ 6, 8, 925 P.2d 60, 62 (declining to answer a certified federal question where, much like Foutch , the federal court had granted a dispositive motion, denied a motion to reconsider, and granted a motion to certify, because such actions indicated "the trial court [had] finalized its determination on the question" and because this Court did not wish "to afford appellate review of a ruling made by a federal judge under the guise of a certified question of law"). But even if the questions in Foutch are not properly presented, we will nonetheless answer the substantively similar questions in the Barrios case. Thus, we see no need to quibble with the certifiability of the Foutch questions.

Vanderpool v. State , 1983 OK 82, ¶ 24, 672 P.2d 1153, 1157 ("[T]his Court is mindful of the oft-expressed view of this Court that if the doctrine of governmental immunity is to be totally abrogated, such should be done by the Legislature and not by the courts of this State." (citing Ruble v. Dep't of Transp. , 1983 OK 24, 660 P.2d 1049 ; Spaulding v. State ex rel. Dep't of Transp. , 1980 OK 145, 618 P.2d 397 ) ); see also Perry v. City of Norman , 2014 OK 119, ¶ 13, 341 P.3d 689, 692 ("[T]he Court, in Vanderpool v. State , 1983 OK 82, 672 P.2d 1153, abrogated the doctrine [of governmental immunity] and acknowledged the Legislature's right to enact sovereign immunity by statute ." (emphasis added) ); Schmidt v. Grady County , 1997 OK 92, ¶ 6, 943 P.2d 595, 597 (same).

1983 OK 82, ¶ 25, 672 P.2d at 1157 ("Our decision is limited in its effect to the heretofore judicially created and recognized doctrine of governmental immunity and is not to be taken as in any way rendering ineffective any act of the Legislature in the area of governmental immunity whether presently in effect or hereafter passed.").

See, e.g. , In re Application of Okla. Capitol Improvement Auth ., 1998 OK 25, ¶ 5, 958 P.2d 759, 762 ("As a matter of fundamental law, the fiscal policy of this state is determined by the legislative department of government."); Calvey v. Daxon , 2000 OK 17, ¶ 21, 997 P.2d 164, 171 ("Except where it encounters a specific constitutional prohibition, the Legislature has the right and the responsibility to declare the fiscal policy of Oklahoma. This Court has no authority to consider the desirability, wisdom, or practicability of fiscal legislation. ... Whether an act is wise or unwise, whether it is based on sound economic theory or whether it is the best means to achieve the desired result are matters for legislative determination." (footnote omitted) ).

The Governmental Tort Claims Act, ch. 226, § 3, 1984 O.S.L. 811, 813 (codified at 51 O.S.Supp.1984 § 152.1 ).

See, e.g. , Tuffy's, Inc. v. City of Oklahoma City , 2009 OK 4, ¶¶ 16-20, 212 P.3d 1158, 1166-67 (analyzing 51 O.S. § 155(4) to determine whether a municipality may be held liable for the alleged negligence of its police officer); Schmidt , 1997 OK 92, ¶¶ 7-15, 943 P.2d at 597-98 (analyzing 51 O.S. § 155(6) to determine whether the county may be held liable for the alleged negligence of its deputy sheriff); Nguyen v. State , 1990 OK 21, ¶¶ 3-5, 8-9, 788 P.2d 962, 964-66 (analyzing 51 O.S. § 155(5) and (28) to determine whether the State may be held liable for injuries resulting from a state institution's release of a mental patient).

Bosh , 2013 OK 9, ¶ 23, 305 P.3d at 1001.

Gunn v. Consol. Rural Water & Sewer Dist. No. 1, Jefferson Cty. , 1992 OK 131, ¶ 7, 839 P.2d 1345, 1349 (citing Nguyen , 1990 OK 21, ¶ 1, 788 P.2d at 966-67 (Opala, V.C.J., concurring); Ingram v. State , 1990 OK 2, ¶ 9, 786 P.2d 77, 80 ; Huff v. State , 1988 OK 118, ¶ 6 n.19, 764 P.2d 183, 186 n.19 ; Jarvis v. City of Stillwater , 1983 OK 88, ¶ 10, 669 P.2d 1108, 1111 ). Additionally, by operation of the Supremacy Clause, the GTCA couldn't eliminate a state actor's liability under federal laws like 42 U.S.C. § 1983, see Tiemann v. Tul-Ctr., Inc. , 18 F.3d 851, 853 (10th Cir. 1994), nor did it affect claims that fail to implicate the state's sovereign immunity, such as those against state officials in their individual capacity and those seeking only prospective injunctive relief. See, e.g. , Frew ex rel. Frew v. Hawkins , 540 U.S. 431, 436-37, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004).

Article II, Section 30 of the Oklahoma Constitution does not itself create a cause of action. Thus, the cause of action we recognized was not one created by the Oklahoma Constitution, but rather by the Court through its common law power to create a cause of action for the alleged deprivation of a constitutional right. See Bosh , 2013 OK 9, ¶ 8, 305 P.3d at 997 (citing Ohio Casualty Insurance Co. v. Todd , 1991 OK 54, 813 P.2d 508, for the proposition that "a court may recognize private causes of action").

Act of April 21, 2014, ch. 77, §§ 1-2, 2014 O.S.L. 245, 249-50 (codified at 51 O.S.Supp.2015 §§ 152 -153 ).

Id. sec. 1, § 152(14), 2014 O.S.L. at 249 (codified at 51 O.S.Supp.2015 § 152(14) ).

Id. sec. 2, § 153(B), 2014 O.S.L. at 250 (codified at 51 O.S.Supp.2015 § 153(B) ).

Id. In 2015, the Legislature again amended section 153 of the GTCA to specify that tort claims arising under the Oklahoma Constitution cannot name any state employee as a defendant unless the employee is alleged to have been acting outside the scope of their employment. Act of May 12, 2015, ch. 308, sec. 1, § 153(C), 2015 O.S.L. 1134, 1135 (codified at 51 O.S.Supp.2016 § 153(C) ).

See Fuller v. Odom , 1987 OK 64, ¶¶ 4-5, 741 P.2d 449, 451-52 ("The plain language of the Act expresses the Legislature's intent to abrogate any common law theories of recovery if a governmental tortfeasor may be liable. The Legislature has specifically abrogated any previously existing common law or statutory right of recovery for torts committed by a governmental entity or its employees while acting within the scope of their employment. In Oklahoma, statutes in derogation of the common law are to be liberally construed in order to promote their object. ... The determination of legislative intent controls judicial statutory interpretation...."); cf. Lee v. Bueno , 2016 OK 97, ¶ 51, 381 P.3d 736, 752 (discussing "the power of the Legislature to modify or abrogate the common law by statute" within the context of the interplay between 12 O.S. § 3009.1 and the Collateral Source Rule).

51 O.S.Supp.2015 § 155(25).

It also worth remembering that "a prisoner has a significantly greater burden to bear in establishing his right to a cause of action than does a person who is not incarcerated." Washington v. Barry , 2002 OK 45, ¶ 10, 55 P.3d 1036, 1039 (citing Whitley v. Albers , 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ). Additionally, we have previously declined to create a new tort cause of action for an alleged constitutional violation where an alternative remedy existed to vindicate the alleged wrong. See Perry , 2014 OK 119, ¶ 19, 341 P.3d at 693. Here, 42 U.S.C. § 1983 provides citizens a private cause of action for the deprivation of their federal constitutional rights by a state actor. Since Article II, Sections 7 and 9 of the Oklahoma Constitution mirror the Fourteenth and Eighth Amendments to the United States Constitution, respectively, a violation of these Oklahoma state constitutional rights necessarily gives rise to a § 1983 claim. See Phillips v. Wiseman , 1993 OK 100, ¶ 9, 857 P.2d 50, 53 ; Duckett v. Oklahoma ex rel. Bd. of Regents of Univ. of Okla. , 986 F.Supp.2d 1249, 1258 (W.D. Okla. 2013) ("It is well settled that '[a] § 1983 claim may be available, even though a state remedy is foreclosed by the Oklahoma Governmental Tort Claims Act.' " (alteration in original) (quoting Tiemann , 18 F.3d at 853 ) ). Furthermore, an action against a state actor in their individual capacity seeking prospective injunctive relief could be maintained to prevent a continuing constitutional violation. See Frew , 540 U.S. at 436-37, 124 S.Ct. 899 (recognizing such an action for alleged violations of federal constitutional rights); Gay Activists Alliance v. Bd. of Regents of Univ. of Okla. , 1981 OK 162, ¶ 30, 638 P.2d 1116, 1123 ("It is important to note at this point that for the purpose of the injunction, the Board of Regents, as a body corporate, can be enjoined. Gay Student Services v. Texas A & M University , 612 F.2d 160 (5th Cir.), cert. denied , 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980). The Fifth Circuit, citing Edelman v. Jordan , 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), stated that 'prospective injunctive relief is clearly allowed against state officials in their official capacities.' 612 F.2d at 165.").

2002 OK 45, ¶ 10, 55 P.3d at 1039.

Id . ¶ 18, 55 P.3d at 1041-42 ; see also Bosh , 2013 OK 9, ¶ 21, 305 P.3d at 1001 (describing Washington as merely recognizing a "potential" cause of action).

Ziglar , 137 S.Ct. at 1856 ("[I]n light of the changes to the Court's general approach to recognizing implied damages remedies, it is possible that the analysis in the Court's three Bivens cases might have been different if they were decided today."). Bivens v. Six Unknown Federal Narcotics Agents , 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), is the federal precursor and analog to Bosh , where the United States Supreme Court recognized a money-damages claim against federal officers for violations of the Fourth Amendment. In the decade after Bivens , that Court recognized an implied cause of action in only two other cases involving other constitutional violations. Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (holding that the Fifth Amendment Due Process Clause provides a damages remedy claim of gender discrimination); Carlson, 446 U.S. 14, 100 S.Ct. 1468 (holding that the Eighth Amendment's Cruel and Unusual Punishment Clause provides a damages remedy for failure to provide adequate medical treatment). Those three cases-Bivens , Davis , and Carlson -are the lone instances in which the United States Supreme Court has approved of an implied damages remedy for constitutional violations. Ziglar, 137 S.Ct. at 1855. In the 47 years since Bivens , the Supreme Court has "consistently refused to extend Bivens to any new context or new category of defendants." Id. at 1857 (quoting Corr. Servs. Corp. v. Malesko , 534 U.S. 61, 68, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) ). More tellingly, the Supreme Court has suggested that the continuing validity of Bivens , Davis , and Carlson turns in part on the lack of congressional disapproval of the decisions. Id . at 1856 (noting that "no congressional enactment has disapproved of these decisions").

Ziglar , 137 S.Ct. at 1856.

Id. at 1855.

Id. at 1856.

Id.

Id . (citing 28 U.S.C. § 2679(b)(2)(A) (2012) ).

Id.

Id . at 1857 (internal quotation marks omitted).

Id. (quoting Bush v. Lucas , 462 U.S. 367, 380, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) ).

Id. (internal quotation marks omitted) (quoting Bush , 462 U.S. at 380, 103 S.Ct. 2404 ).

51 O.S.Supp.2015 §§ 152(14), 153(B).

State ex rel. Department of Highways v. McKnight , 1972 OK 3, 496 P.2d 775 (a sovereign state cannot be sued except by express legislative enactment, the right of the sovereign state to immunity from suit is a public right and must not be treated as relinquished or conveyed away by inference or construction, and statutes must clearly permit the state to be sued or the right to do so will not exist).

State ex rel. Department of Highways v. McKnight , 1972 OK 3, 496 P.2d at 782, quoting State ex rel. Williamson, Attorney General v. Superior Court of Seminole County , 1958 OK 52, 323 P.2d 979, 981

State ex rel. Williamson , 323 P.2d at 981 (petition alleged a legislative act violated one, or more, of all of the following provisions of the Constitution of Oklahoma (1951) Art. 5 §§ 46, 55, 59 ; Art. 7 § 10 ; Art. 10 §§ 14, 15, 23 ).

Civil Actions Against State Government, Its Divisions, Agencies and Officers , 73, § 2.34 citing State v. Norman Tobacco Co. , 273 Ala. 420, 142 So.2d 873 (1962) ; Scoa Industries, Inc. v. Howlett , 33 Ill.App.3d 90, 337 N.E.2d 305 (1975) ; Board of Commissioners of Port of New Orleans v. Splendour Shipping & Enterprises Co. , 273 So.2d 19 (La 1973) ; New York State Throughway Authority v. Hurd , 29 A.D.2d 157, 286 N.Y.S.2d 436 (1968).

Civil Actions Against State Government, Its Divisions, Agencies and Officers , 73, § 2.34 citing Megee v. Barnes , 160 N.W.2d 815 (Iowa 1968) ; O'Neill v. State Highway Dept. , 50 N.J. 307, 235 A.2d 1 (1967) ; Koynok v. Commonwealth, State Bd. of Private Academic Schools , 12 Pa. Cmwlth. 375, 316 A.2d 118 (1974) ; Lister v. Board of Regents of University of Wisconsin Sys. , 72 Wis.2d 282, 240 N.W.2d 610 (1976).

Civil Actions Against State Government, Its Divisions, Agencies and Officers , 73, § 2.34 citing Armory Comm. v. Staudt , 388 So.2d 991 (Ala. 1980) (appropriations for Commission payable from state treasury); Rogan v. Bd. of Trustees For State Colleges , 178 Conn. 579, 424 A.2d 274 (1979) (cost of expanded services would draw on public treasury); Lostumbo v. Board of Education , 36 Conn. Super. 293, 418 A.2d 949 (1980) (judgment paid from wholly nonstate funds); Weinstein, Bronfin & Heller v. LeBlanc , 249 La. 936, 192 So.2d 130 (1966) (wages of state senator would be drawn from state); State ex rel. Department of Highways v. McKnight , 1972 OK 3, 496 P.2d 775 (partial payment of judgment from local funds would not defeat immunity); Garrettson v. Commonwealth , 46 Pa. Cmwlth. 136, 405 A.2d 1146 (1979) (monies collected by agency were paid into state treasury); Ables v. Mooney , 164 W.Va. 19, 264 S.E.2d 424 (1979) (sovereign immunity bars relief sought to obtain a monetary recovery against the official based on official's acts).

491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).

Willborn v. City of Tulsa , 1986 OK 44, 721 P.2d 803, 805.

51 O.S.2011 §§ 151 - 172, inclusive, codified in 51 O.S.2011, Ch. 5.

403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

Civil Actions Against the United States: Its Agencies, Officers and Employees (W. Winborne ed. 1982) (399, Section 6.39 [citing 28 U.S.C. §§ 1346(b), 2671 -2680 ) and Carlson v. Green 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) ].

Civil Actions Against the United States: Its Agencies, Officers and Employees (W. Winborne ed. 1982) 401, Section 6.41 (emphasis added).

Carlson v. Green , 446 U.S. at 19, 100 S.Ct. 1468 (emphasis added).

2014 OK 119, ¶ 1, 341 P.3d 689.

Perry v. City of Norman , 2014 OK 119, ¶¶ 9-11, 341 P.3d 689, 690-691.

1983 OK 82, 672 P.2d 1153, 1156 (noting the "oft-expressed view of this Court that if the doctrine of governmental immunity is to be totally abrogated, such should be done by the Legislature and not by the courts of this State").

Alden v. Maine , 527 U.S. 706, 715, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) quoting Nevada v. Hall , 440 U.S. 410, 414, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979).

Smith v. State ex rel. Dept. of Transportation , 1994 OK 61, 875 P.2d 1147, 1148-1149 (statutory tort immunity [51 O.S.Supp.1988 § 155(14) ] for a claim resulting from a loss to any person covered by any workers' compensation act or any employers' liability act did not violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U. S. Constitution); Childs v. State ex rel. Oklahoma State University , 1993 OK 18, 848 P.2d 571, 577 (State is not mandated by the U.S. Constitution to have a governmental tort liability act that creates delictual responsibility co-extensive with that of private tortfeasors).

Wilson v. Gipson , 1988 OK 35, 753 P.2d 1349, 1354 citing Neal v. Donahue , 1980 OK 82, 611 P.2d 1125, 1129.

51 O.S.2011 § 155 (25) (and as amended) states: "The state or a political subdivision shall not be liable if a loss or claim results from: ... 25. Provision, equipping, operation or maintenance of any prison, jail or correctional facility, or injuries resulting from the parole or escape of a prisoner or injuries by a prisoner to any other prisoner; provided, however, this provision shall not apply to claims from individuals not in the custody of the Department of Corrections based on accidents involving motor vehicles owned or operated by the Department of Corrections...."